**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| LBC FIXED INCOME FUND I 2020,LLC | CIVIL ACTION |
| VERSUS | NO. 2024-008 |
| WATKINS HEALTHCARE GROUP, LLC, ET AL. | SECTION E (3) |

**ORDER AND REASONS**

Plaintiff/Counterclaim-Defendant LBC Fixed Income Fund I 2020, LLC ("LBC"), filed a Motion to Compel.[1] Defendants/Counterclaim Plaintiffs, Watkins Healthcare Group, LLC, W and W Recruiting and Staffing Solutions, LLC, and Anieze M. Watkins (collectively, "Defendants") filed an opposition,[2] LBC replied.[3] The Court heard oral argument on June 18, 2024. Based on the parties' submissions, the record, and the law, and for the reasons below, the motion is granted in part and denied in part.

**I.   Introduction**

LBC sued Defendants relative to two promissory notes that were signed by Watkins Healthcare Group and guaranteed by both W and W Recruiting and Staffing Solutions, LLC, and Ms. Watkins. LBC alleges that the amount due on the notes as of August 15, 2022 was $1.8 million plus continuing interest and fees.[4] The interest

---

[1] Doc. 30.
[2] Doc. 32.
[3] Doc. 33.
[4] Doc. 1 at 5. The interest at issue may be substantial. Documents attached to the Complaint contemplate a default rate of 24.00% E.g., Doc. 1-10 at 2.

1

at issue may be substantial; the promissory notes contemplate a default rate of 24.00%.[5] Correspondence attached to the Complaint indicates that, after a dispute arose, the parties agreed that certain future payments by Defendants would be allocated in a particular manner as among principal, interest, and fees.[6]

Defendants counterclaimed that LBC is liable for claims including breach of contract. They seek damages from LBC relative to their loss of opportunity, damage to business reputation, and lost income.[7] The Motion to Compel relates to a request for production directed by LBC to all three defendants relative to tax returns, specifically including any Form Schedule C documents.

## II.     LAW AND ANALYSIS

### A. Scope of Discovery.

Unless otherwise limited by court order, Rule 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). There are certain categories of information, however, that are presumptively sensitive such that disclosure implicates significant interests. *See*

---

[5] Doc. 1 at 5.
[6] E.g., Doc. 1-10 at 2.
[7] Doc. 22.

*Cazoria v. Koch Foods of Mississippi, LLC,* 838 F.3d 540, 549 & n.22 (5th Cir. 2016) (citing cases).

Discovery requests for personal tax returns implicate both personal privacy concerns and the "effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system." *See Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993).[8] Thus, discovery requests for personal tax returns require a showing of both relevance and particular need. *See id.* Given the importance of the administration of federal tax law, this principle presumably applies with equal force to business tax returns. *see also Cazoria*, 838 F.3d at 549 (referring to "tax-return cases" without distinguishing between the nature of the filer).

In the context of post-judgment discovery of tax returns, the Fifth Circuit has held that the party seeking production must show relevance, at which point the burden shifts to the party opposing production to show that other sources exist from which the information in the tax returns may be "readily obtained." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). This burden-shifting framework makes equal sense at the prejudgment stage given that the same informational asymmetry exists. Multiple lower courts have adopted the burden-shifting approach in the

---

[8] Although *Natural Gas Pipeline* involved production of personal tax returns in response to a *sua sponte* sanction, the Fifth Circuit's citation of that case in *Cazoria* confirms that the *Natural Gas Pipeline* principle responds to ordinary discovery disputes as well.

context of prejudgment discovery. *See, e.g.*, *Matter of GH Storm Cat, LLC*, No. CV 20-3085, 2022 WL 1699002, at *4 (E.D. La. Mar. 9, 2022).

### B. Request for Production No. 10

Request for Production No. 10, which was propounded on all defendants,[9] states:

> Produce all federal tax returns including any amendments thereto filed for the years 2020, 2021, 2022, and 2023 and specifically including any Schedule C forms for WHG and other forms that would tend to show the amounts paid to LBC.[10]

Defendants objected that this information is irrelevant "to the issue of payment of the LBC loans, which LBC should have accurate records of . . . ."[11] Defendants have not objected to the period at issue, which appropriately mirrors the 2020 origination date of the loans.[12]

### A. Interest Calculations in Tax Documents

LBC maintains that the tax documents, including any Schedule Form C documents,[13] are relevant to Defendants' claim that LBC misapplied loan payments

---

[9] Defendants' briefing raises an argument that Request for Production No. 10 is directed only to Watkins Healthcare Group. They suggest that the phrase, "specifically including any Schedule C forms for WHG ," narrows the entire request to pertain only to that particular entity. Although creative, this is not a natural reading of the request. Moreover, this objection was not raised in the written objections supplied with the Motion to Compel. *See also* Doc. 33 at 3 (noting that the issue was not discussed during the Rule 37 conference).

[10] Doc. 30-3 at 4.

[11] Doc 30-3 at 4.

[12] *See* Doc. 33 at 6 n.8.

[13] An individual who is a sole proprietor may report business profits or loss in a Schedule Form C, which breaks out interest on loans as a separate line-item business expense. Doc. 33-2 at 1. Presumably, the LLC defendants did not prepare such a form, Doc. 32 at 2, but they must still produce any tax document that indicates the amount of interest paid on the LBC loan (if such a document exists).

to interest and costs, rather than the principal amounts.[14] LBC speculates that Defendants may be "attempting to hoodwink the Court into giving them credit for principal payments while also obtaining a tax reduction by claiming those same amounts as interest payments or other loan expenses when they filed tax returns with the IRS."[15] Defendants, in turn, contend that LBC has mischaracterized their claim. According to Defendants, they do not have enough information to know whether LBC misapplied loan payments. Moreover, Defendants' oral argument indicates that, while the sums paid on the loans should be clear, the complexity of the loan terms may complicate whether Defendants intended certain payments to be directed to principal, interest, or costs.

If Defendants have calculated the amount of interest paid on the LBC loans for a given tax year, that information is discoverable.[16] The breakdown of principal and interest on a particular payment is relevant to the total amount due and the fulfillment of certain promissory note terms. And while LBC may know how it categorized payments, there is no sign that Defendants have advised LBC of their position on payment allocation.[17] that LBC is already in possession of information relative to Defendants' position on the interest paid.

---

[14] Doc. 30-2 at 1.
[15] Doc. 30-2 at 4. To be clear, the undersigned is not suggesting that Defendants are attempting to "hoodwink" anyone and will not entertain such an allegation absent supporting evidence. The potential inconsistency in Defendants' description of loan payments, however, is relevant regardless of its cause.
[16] There has been no claim of privilege or work product protection in response to this request for production.
[17] Doc. 32 at 4. LBC has produced a document providing its own calculation. Doc. 33-3 at 5; *see also* Doc. 33 at 6 n.7.

Given the sensitivity of tax documents, and even though a protective order may provide some assurance, Defendants may prefer to produce the interest calculation information in a different document (if one exists) or through an interrogatory response. But it appears those alternative mechanisms may be unavailable.[18] Thus, Defendants may choose between providing (a) a redacted version of any Form Schedule C documents or other tax documents reflecting information submitted to the IRS relative to interest on the LBC loans *or* (b) an interrogatory-response styled narrative as to the interest amount on the LBC loans provided to the IRS for 2020, 2021, 2022, and 2023. If tax return documents have not yet been prepared for 2023, the production may be supplemented later.

Even if produced, this information may not provide LBC with the amount of detail it seeks. Defendants pointed out in briefing[19] and at oral argument that the amount on the Schedule Form C may hypothetically encompass other loans' interest amounts, in which case it would be necessary to seek more information to determine how much of Defendants' payments was allocated to interest on the LBC loans (at least according to their own calculations). The Court reserves ruling on the hypothetical question of whether, if Defendants produce the redacted Schedule Form C documents or similar information, LBC may discover how the interest amount(s) contained therein were calculated.

---

[18] Oral argument highlighted the complexity of attempting to calculate this breakdown.
[19] Doc 30-3 at 4.

### B. Income Information in Tax Documents

LBC argues that income tax returns are relevant to Defendants' counterclaim, which seeks damages including lost profits and business income. Income tax returns are relevant to claims for damages that include lost profits and business income. *E.g., United States ex rel. Univ. Loft Co. v. AGS Enterprises, Inc.*, No. SA-14-CA-528-OLG, 2016 WL 9462335, at *10 (W.D. Tex. June 29, 2016) ("[I]ncome tax returns, accounting records and other financial information would appear to be crucial to an expert reviewing a claim for damages based on lost profits."). Nor have Defendants identified any category of documents that would "reflect the substantial equivalent of the information contained in their tax returns and financial statements." *See Torsh, Inc. v. Audio Enhancement, Inc.*, No. CV 22-2862, 2023 WL 7688583, at *13 (E.D. La. Nov. 15, 2023). Accordingly, Defendants have not demonstrated how LBC can acquire this relevant information other than through the production of income tax returns. The income tax returns must be produced, but they may be redacted insofar as they contain information irrelevant to the issue of damages or loan-interest calculations. Given the sensitivity of tax documents, production of tax documents is not required until entry of an agreed-upon protective order.

### III. Conclusion

For the above reasons,

**IT IS ORDERED** that the Motion to Compel (Doc. 30) is **GRANTED IN PART.** As to any Schedule Form C documents or other tax documents that would reflect interest paid on the LBC loans, Defendants must response to Request for

Production No. 10 by providing either a redacted version of those documents or an interrogatory-response styled narrative relative to the interest amount(s) provided to the IRS with respect to the LBC loans. As to any income tax returns, Defendants must provide copies to LBC with irrelevant information redacted. All such documents (or information) are to be produced for tax years 2020, 2021, 2022, and 2023 and within five days of the entry of an agreed-upon protective order.

**IT IS FURTHER ORDERED** that the parties are to work together to prepare a proposed protective order.

**IT IS FURTHER ORDERED** that, to the extent there is any disagreement as to redactions or protective order terms, the parties should schedule a status conference with the Court.

**IT IS FURTHER ORDERED** that the motion is **DENIED** in all other respects.

New Orleans, Louisiana, this 21st day of June, 2024.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE