UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LBC FIXED INCOME FUND I 2020, LLC,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-8** |
| **WATKINS HEALTHCARE GROUP, LLC, ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

### ORDER AND REASONS

Before the Court is a "Motion to Dismiss Counterclaim as Prescribed" pursuant to Federal Rules of Civil Procedure 12(b)(6), filed by Plaintiff, LBC Fixed Income Fund I 2020, LLC ("LBC").[1] Defendants Watkins Healthcare Group, LLC, W and W Recruiting and Staffing Solutions, LLC, and Anieze Watkins filed an opposition ("Watkins").[2] LBC filed a reply.[3] For the reasons that follow, the Court **GRANTS** LBC's motion to dismiss.

### BACKGROUND

LBC alleges that on March 31, 2020, Watkins executed a first promissory note in favor of LBC, promising to pay LBC $600,000.[4] Watkins executed a second promissory note in favor of LBC, promising to pay LBC $650,000, on April 28, 2020.[5] The notes were guaranteed by Defendants W&W and Ms. Watkins.[6] The first note is secured by mortgages in favor of LBC on two properties in New Orleans.[7] LBC alleges the payments on the notes are in arrears.[8] LBC alleges the parties agreed to six different extension agreements, dated June 30, 2021, July 30, 2021, December 10, 2021, February 16, 2022, August 15, 2022,

---

[1] R. Doc. 23.
[2] R. Doc. 27.
[3] R. Doc. 29.
[4] R. Doc. 1, pp. 3-4.
[5] *Id.* at p. 4.
[6] *Id.*
[7] R. Doc. 23-3, pp. 2-3.
[8] R. Doc. 1, p. 4.

1

and September 15, 2022.[9] After Watkins failed to make payment for the month of January 2023 and failed to pay property taxes on the properties, LBC put Watkins in default.[10]

On March 17, 2023, LBC filed suit in state court on three notes.[11] LBC alleged in its state court complaint that Watkins executed a third note, secured by a mortgage, which entitled LBC to executory process on the properties as well as the principal balance, interest, and other fees that the first two notes allowed.[12] LBC attached a proposed order to its complaint for a "Writ of Seizure and Sale" for Watkins' properties.[13] The state court judge signed the order on April 5, 2023.[14] On May 1, 2023, the Clerk of Court issued a Writ of Seizure and Sale of the properties.[15] LBC alleges that when Watkins notified LBC that the third note was never funded, LBC moved to vacate the order and the Writ.[16] As a result, the sheriff's sale never occurred.[17] On May 12, 2023, LBC amended its pleadings to include only the first two notes, converting the matter to a regular proceeding.[18] Subsequently, the state court dismissed the suit without prejudice for improper venue.[19]

LBC brought suit in this Court on January 2, 2024.[20] LBC asks the Court to find Watkins has breached the terms of the two promissory notes by failing to pay the amounts due thereunder.[21] LBC further asks the Court for a judgment against Watkins awarding to

---

[9] *Id.* Defendant Watkins disputes the validity and terms of the alleged extension agreements.
[10] *Id.* at pp. 4-5.
[11] *See generally* R. Doc. 23-3.
[12] *Id.* at pp. 3-4.
[13] *Id.* at p. 7.
[14] R. Doc. 23-3, p. 7.
[15] R. Doc. 23-2, p. 5.
[16] *Id.* at p. 6.
[17] *Id.*
[18] *Id.*; R. Doc. 27, p. 3.
[19] R. Doc. 23-2, p. 6.
[20] *Id.*
[21] R. Doc. 1, p. 6.

2

LBC all amounts due and payable under the promissory notes, including the full amount of the principal balance, interest, other costs, and attorneys' fees.[22]

On April 1, 2024, Watkins sought leave to file a countercomplaint,[23] which was granted.[24] On April 26, 2024, Watkins filed its countercomplaint,[25] alleging (1) that LBC committed a bad faith breach of contract, (2) that LBC violated the Louisiana Unfair Trade Practices Act ("LUTPA"),[26] and (3) that Watkins is entitled to a declaratory judgment that any alleged "extension agreements" are invalid.[27] Relevant to the instant Motion, Watkins argues that LBC violated LUTPA by misrepresenting the existence of the third note in the state court suit and seeking a writ of sale and seizure on that false basis through executory process, causing harm to Watkins' business standing and credit.[28] On May 17, 2024, LBC filed its Motion to Dismiss Watkins' LUTPA counterclaim, Count 2, on the basis that the claim has prescribed.[29]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[30] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31]

---

[22] *Id.* at pp. 6-7.
[23] R. Doc. 15. After the clerk noticed Watkins that their filing was deficient because it lacked a memorandum in support, Watkins resubmitted their motion for leave on April 9, 2024. R. Doc. 16.
[24] R. Doc. 21.
[25] *See generally* R. Doc. 22.
[26] LA. R.S. 51 § 1401 *et seq.*
[27] R. Doc. 22, pp. 5-6.
[28] *See id.* at p. 4.
[29] R. Doc. 23.
[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[33] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[34]

A Rule 12(b)(6) motion to dismiss is the proper procedural mechanism to raise a statute of limitations defense.[35] A "motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint."[36] When a "plaintiff's claims are prescribed on the face of the petition, plaintiff has the burden of proving the claims are not prescribed."[37] In summary, "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[38]

If prescription is apparent on the face of the pleadings, "the burden shifts to the plaintiff to establish that the applicable prescriptive period has been suspended or interrupted."[39] For example, prescription may be delayed by continuing torts, "when the cause of the plaintiff's injury is a continuous one giving rise to successive

---

[32] *Id.*
[33] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[34] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[35] *Bowers v. Nicholson*, 271 F. App'x 446, 449 (5th Cir. 2008).
[36] *Cranner v. Coletti*, No. CIV.A. 13-6681, 2014 WL 1407328, at *2 (E.D. La. Apr. 10, 2014).
[37] *Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co.*, No. CV 17-0200, 2018 WL 2209165, at *4 (W.D. La. May 11, 2018*), aff'd sub nom. Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 F. App'x 289 (5th Cir. 2019).
[38] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[39] *Caldwell*, 781 F. App'x at 293 (citing *Potier v. JBS Liberty Secs., Inc.*, No. 6:13-CV-00789, 2014 WL 5449726, at *3 (W.D. La. Oct. 24, 2014)).

4

damages."[40] A court inquires whether the tortfeasor "perpetuates the injury through overt, persistent, ongoing acts."[41] The Louisiana Supreme Court has recognized that "[a] continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act."[42] "If the operating cause of the injury is not the result of continuous conduct, 'prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party.'"[43] Therefore, if a party fails to allege a continuing tort theory, a court looks to when the party was aware of the act(s) underlying the LUTPA claim to assess when prescription begins.[44]

## LAW AND ANALYSIS

The relevant portions of LUTPA provide:

A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

E. The action provided by this Section shall be subject to a **liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action**.[45]

LBC filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing Count 2 of Watkins' countercomplaint is barred by prescription.[46] LBC argues that, because LBC filed suit in state court on March 17, 2023, Watkins' countercomplaint

---

[40] *Hunters Run Gun Club, LLC v. Baker*, No. CV 17-176-SDD-EWD, 2019 WL 3240044, at *5 (M.D. La. July 18, 2019).
[41] *Caldwell*, 781 F. App'x at 294.
[42] *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999).
[43] *Caldwell*, 781 F. App'x at 296 (citing *Crump*, 737 So. 2d at 726).
[44] *See, e.g.*, *Cano v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 12-2328, 2013 WL 3930087, at *7 (E.D. La. July 29, 2013).
[45] La. R.S. 51 § 1409(A), § 1409(E) (emphasis added).
[46] R. Doc. 23.

5

is prescribed on its face.[47] LBC argues, assuming arguendo that LBC committed a "wrongful act" under LUTPA, that act was the filing of the March 17, 2023, lawsuit.[48] LBC argues that, because Watkins had knowledge of LBC's intent to seek executory process under the third note upon LBC filing suit, prescription commenced at that point.[49] LBC also argues the single act of filing the state court lawsuit is not a continuing tort because the state court's signing and issuance of the Writ of Sale and Seizure is merely a "continuation of the ill effects of an [alleged] original, wrongful act."[50] LBC argues that "failure . . . to remedy an initial wrongdoing is not a continuation of the initial wrongdoing and does not affect prescription."[51] Because Watkins, at the earliest, filed its counterclaim on April 1, 2024, "more than one year had passed since the alleged wrongful act which caused the damage for which Watkins seek[s] relief." [52]  LBC argues Watkins' claim is prescribed on its face.

On May 28, 2024, Watkins filed an opposition to LBC's motion to dismiss, arguing its counterclaim has not prescribed.[53] First, Watkins argues the "Writ represents the injury sustained," so because the Writ was signed on April 5, 2023, and issued on May 1, 2023, Watkins only suffered "ascertainable loss giving rise to a cause of action under" LUTPA beginning at the earliest on those two dates.[54] Watkins argues it suffered ascertainable loss only when the writ was signed because that effected a "constructive

---

[47] *Id.*
[48] R. Doc. 23-2, p. 12.
[49] *See id.* at p. 10-11. LBC asserts that Watkins was emailed a courtesy copy of the state court complaint and filings on March 17, 2023. *Id.* at p. 11.
[50] *Id.* at p. 12 (citing *Miller v. Conagra, Inc.*, 991 So. 2d 445, 456 (La. 2008)).
[51] *Id.*
[52] *Id.* at p. 5.
[53] R. Doc. 27.
[54] *Id.* at pp. 1-2.

6

seizure," and only then did Watkins suffer damages to its business and credit standing.[55] Watkins cites the Louisiana Civil Code Article 3492 and Louisiana tort cases in support of its argument.[56] Watkins relies on a "two-part test" from the Louisiana Supreme Court case *Cheramie Services v. Shell Deepwater Production*, which held that private persons, not just business entities, may bring claims under LUTPA.[57] Watkins argues that to have a claim under LUTPA, a party must suffer ascertainable loss, *and* the loss must be the result of the other party's wrongful act(s).[58] Thus, Watkins argues prescription had not run when Watkins filed its counterclaim because it did not suffer ascertainable loss until April 5 and May 1 of 2023.[59] Second, although Watkins does not specifically make an argument regarding the continuing tort theory of LBC's alleged wrongful acts, Watkins argues "[a]t no time . . . did LBC cease its deceptive and improper representations and requests for relief with the court" until it amended its state court petition on May 12, 2023.[60] Watkins seems to imply that LBC's failure to amend its petition prior to May 12. 2023, constitutes a continuing tort, though Watkins does not affirmatively assert this argument.[61]

On June, 3, 2024, LBC filed a reply, arguing that the April 5, 2023, and May 1, 2023, dates are not additional wrongful acts in violation of LUTPA, and the continuing tort doctrine does not apply.[62]

---

[55] *See id.* at p. 3. The property was never seized and sold because LBC motioned the court to vacate the writ. R. Doc. 23-2, p. 6.
[56] R. Doc 27, p. 2-3. Article 3492 governs liberative prescription in general delictual (tort) actions where prescription "commences to run from the day injury or damage is sustained." LA. C.C. art. 3492.
[57] R. Doc. 27, p. 2-3; *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053 (La. 2010).
[58] R. Doc. 27, p. 3-4. Watkins cites *Ziegler* in support of this argument.
[59] *Id.* at p. 5.
[60] *See id.* at p. 3.
[61] *Id.*
[62] R. Doc. 29.

First, the Court rejects Watkins' argument that prescription begins to run only when a party suffers an ascertainable loss.[63] The statute provides, "[t]he action provided by this Section shall be subject to a liberative prescription of one year **running from the time of the transaction or act which gave rise to this right of action**."[64] Applying the plain meaning of the statutory language, courts have held that "[t]he date of the alleged wrongful act begins the running of the prescription . . . ."[65]

Although under the statute an act gives rise to a LUTPA claim when the plaintiff "suffers . . . ascertainable loss," prescription runs from the date of the transaction or act.[66] The "wrongful act" that starts the running of prescription is distinct from a party's "claimed injury" under LUTPA. The "ascertainable loss" language simply describes the damages giving rise to a LUTPA claim, which is stated in § 1409(A) with reference to § 1405. *Ziegler* supports this interpretation of LUTPA's one-year prescriptive period.[67] The *Ziegler* court explained that "plaintiffs have one year from the time of the 'transaction or act which gave rise to this right of action' to sue under LUTPA . . . . The act gives right to a right of action under section 1409" when the plaintiff suffers ascertainable loss.[68] This language merely emphasizes that a plaintiff must suffer the type of loss protected under LUTPA to bring a claim under the statute. It does not delay the toll of prescription.

---

[63] Watkins' reliance on general tort law prescription under LA. C.C. art. 3492 is inapplicable to LUTPA claims. Section 1409(E) clearly explains how to calculate prescription for LUTPA actions.
[64] LA. R.S. 51 § 1409(E) (emphasis added).
[65] *Ziegler v. Hous. Auth. of New Orleans*, 118 So. 3d 442, 452 (La. Ct. App. 4th Cir. 2013).
[66] *Id.*; LA. R.S. 51 § 1409; *see* LA. R.S. 51 § 1405 (listing the types of unfair acts or practices protected under LUTPA). Neither party addresses whether LBC's alleged acts is covered under LUTPA. As a result, the Court does not address the issue.
[67] *See Ziegler*, 118 So. 3d at 452.
[68] *Id.* The court goes on to analyze whether the wrongful acts occurred within a year prior to the plaintiff's lawsuit. Because the acts occurred within the year prior, the plaintiff's claim had not prescribed. *Id.*

Courts analyze the wrongful act(s) and the ascertainable loss as distinct occurrences; only the date of the wrongful act(s) is essential in calculating whether a LUTPA claim has prescribed.[69]

The Court finds that LBC's alleged "act which gave rise" to this LUTPA action occurred when it filed suit in state court on March 17, 2023.[70] One year from March 17, 2023, was March 17, 2024. As a result, Watkins' claim under LUTPA had already prescribed on April 1, 2024, when Watkins filed its countercomplaint.[71]

The only way that Watkins' claim would *not* have prescribed on March 17, 2024, would be if LBC's actions were continuous torts, delaying the onset of the prescriptive period until after the March 17, 2023, date. Watkins has not provided the Court with any argument to support that the April 5, 2023, and May 1, 2023, dates, when the state court signed and issued the Writ of Sale and Seizure, were part of a continuing tort by LBC. Regardless, assuming arguendo that Watkins suffered harms because of LBC's act in filing the March 17, 2023, lawsuit, the Court finds that the "resulting harms [Watkins] has suffered are the byproducts of that act. Louisiana law is clear that such circumstances do not form the basis of a continuing tort."[72]

From the face of the countercomplaint, Watkins' wrongful LUTPA claim is prescribed. The burden shifted to Watkins to show the claim has not been prescribed. Watkins has not met its burden of proof. Accordingly, Watkins has failed to carry its

---

[69] *See Mercato Elisio, LLC v. Deveney*, No. CV 15-563, 2016 WL 4181021, at *8 (E.D. La. Aug. 8, 2016) (Vance, J.) ("Here, Mercato's claimed injury is the non-approval of its application before the HDLC, so any wrongful acts that contributed to that injury occurred, at the latest, at the time of the HLDC vote in August 2012.").
[70] R. Doc. 23-3. Watkins had knowledge of LBC's intent to seek executory process upon LBC filing suit.
[71] R. Doc. 22.
[72] *Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 F. App'x 289, 296 (5th Cir. 2019).

burden of showing the LUTPA claim is not prescribed, and Count 2 of Watkins' counatercomplaint must be dismissed.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss,[73] filed by LBC, is **GRANTED**. Count 2 of Watkins' countercomplaint,[74] Watkins' LUTPA claim against LBC, is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 1st day of July, 2024.

*[signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[73] R. Doc. 23.
[74] R. Doc. 22.